UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| UNITED STATE OF AMERICA EX. REL. §<br>MICHAEL MASTEJ §<br>§<br>VS. §<br>§<br>HEALTH MANAGEMENT ASSOCIATES, §<br>INC., ET. AL. | 8:10CV0066-T23<br>TBM<br>CIVIL ACTION NO.<br>_____ |

FILED IN CAMERA AND
UNDER SEAL PURSUANT TO
31 U.S.C. §3730(b)(2)

PLAINTIFF'S COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

I.

PARTIES

1. The Plaintiff is the United States of America *ex relatione* J. Michael Mastej under the provisions of 31 U.S.C. § 3730(b). J. Michael Mastej is an individual residing in Bonita Springs, Florida.

2. Defendant Health Management Associates, Inc. ("HMA") is a Delaware corporation doing business in Florida, Texas and in several other states.

Pursuant to 31 U.S.C. §3730(b)(2), service of process on this Defendant shall be deferred until ordered by the Court.

Defendant HMA is incorporated under the laws of the state of Delaware with its home office at 1511 Pelican Bay Blvd., Suite 500, Naples, Florida 34108-2710.

When ordered by the Court, service of process on said Defendant may be had by serving CT Corporation System at 1200 South Pine Island Road, Plantation, Florida 33324.

748879.5 SPH.20885.0101.121509

3. Defendant HMA, LLC. f/k/a Naples HMA, Inc. ("Naples HMA") is a Florida limited liability company doing business in Naples, Florida.

Pursuant to 31 U.S.C. §3730(b)(2), service of process on this Defendant shall be deferred until ordered by the Court.

Defendant Naples HMA is organized under the laws of the state of Florida with its principal office at 5811 Pelican Bay Boulevard, Suite 500, Naples, Florida 34108.

When ordered by the Court, service of process of said Defendant may be had by serving CT Corporation System, 1200 South Pine Island Road, Plantation, Florida 33324.

## II.

## JURISDICTION AND VENUE

4. This Court has jurisdiction and venue of this action pursuant to 28 U.S.C. §1345 and 31 U.S.C. §3732(a).

## III.

## SERVICE OF PROCESS

5. Pursuant to the provisions of 31 U.S.C. §3730(b)(2), service of process shall be served upon the Government in accordance with the Federal Rules of Civil Procedure by:

    a.    Delivering a copy of the Summons and Complaint to the United States Attorney for the Middle District of Florida, or to an Assistant United States Attorney or clerical employee designated by the United States Attorney in writing or by sending a copy of the Summons and of the Complaint by Certified Mail addressed to the Civil Process Clerk of the United States District Attorney for the Middle District of Florida, and

b.  By sending a copy of the Summons and of the Complaint by Certified Mail to the Attorney General of the United States at Washington, D.C.

6. Pursuant to the provisions of 31 U.S.C. §3730, this Complaint is filed *in camera*, and no service of process shall be had upon the Defendants until further order of the Court, pursuant to 31 U.S.C. §3730(b)(2).

## IV.

## CONDITIONS PRECEDENT

7. Relator, who has direct and independent knowledge of the information upon which this suit is based, has heretofore complied with the provisions of 31 U.S.C. §3730(b)(2) by providing a written disclosure of substantially all material evidence and information possessed by Relator to the United States Attorney for the Middle District of Florida.

## V.

## IDENTIFICATION OF PARTIES

8. At all times, J. Michael Mastej was an individual residing in Bonita Springs, Florida. He was employed by HMA or one of its affiliates in January 2001, and his employment was terminated in October, 2007. During that period, starting on February 5, 2007, he served as Chief Executive Officer ("CEO") for a hospital owned by Defendant Naples HMA, Inc., which did business under the name of Physicians Regional Medical Center – Collier Boulevard. After leaving his employment with Physicians Regional Medical Center – Collier Boulevard, J. Michael Mastej then became CEO of Bonita Community Health Center, located in Bonita Springs, Florida. While employed as CEO of Physicians Regional Medical Center – Collier Boulevard, and subsequently when serving as CEO of Bonita Community Health Center, Mr. Mastej was also able to observe HMA

and its affiliates illegally recruiting and inducing physicians to practice and have procedures performed at HMA and its affiliates' facilities.

9. Defendant HMA is a business organization, which was incorporated in Delaware in 1979, but first began operations through a subsidiary that was formed in 1977. It became a public company in 1991.

10. Defendant Naples HMA, Inc. has been in operation since approximately 2004 and does business under various names, including Physicians Regional Healthcare System, Physicians Regional Medical Center – Pine Ridge, and Physicians Regional Medical Center – Collier Boulevard.

11. HMA and its various subsidiaries primarily operate general acute care hospitals in non-urban areas. It presently operates approximately 56 hospitals in 15 states, with a total of approximately 8,000 licensed beds.

## VI.

## SUMMARY OF CLAIMS

12. The payment of monies, or any other thing of value, whether directly or indirectly, in cash or in kind, to physicians or others, in whole or in part to induce the referral of Medicare patients, is unlawful under the provisions of 42 U.S.C. § 1320a-7b(b), known as the Medicare Anti-Kickback Laws.

13. The acceptance of Medicare patient referrals by a hospital (or other entity providing healthcare) from referring physicians having a "financial relationship" (as defined in the statute) with the entity providing healthcare is unlawful under the provisions of 42 U.S.C. §1395nn (known as the Stark laws). The statute prohibits the hospital (or other healthcare provider) from submitting Medicare claims for payment based on such referrals. The statute further expressly prohibits the payment of any Medicare claims submitted in

violation of 42 U.S.C. § 1395nn(a)(1). Moreover, the regulations implementing 42 U.S.C. § 1395nn expressly require, in 42 C.F.R. § 411.353, that any entity collecting payment for a service "performed under a prohibited referral must refund all collected amounts on a timely basis."

14. HMA and Naples HMA, in violation of 42 U.S.C. §1320a-7b(b) and 42 U.S.C. § 1395nn, in Florida, as well as elsewhere, beginning at least by early 2007, and continuing to the present time, have acted to induce referrals of Medicare patients (as well as other patients) from physicians and others by conduct which includes, but is not limited to, the following:

   a. Transporting physicians by private jet to the Masters Golf Tournament in Augusta, Georgia as an inducement to practice at and refer patients to HMA affiliated hospitals and other health care operations;

   b. Making payments to physicians, disguised as payments for on-call services, to induce such persons to practice and refer patients to HMA affiliated hospitals and other facilities;

   c. Providing free or reduced rate rents for office space in facilities owned or operated by HMA and its affiliates near HMA affiliated hospitals or other healthcare operations as an inducement to physicians to practice at and to refer patients to HMA affiliated hospitals or other healthcare operations.

15. From at least early 2007 until the present, in Florida and elsewhere, HMA and Naples HMA and their affiliates have accepted Medicare referrals from physicians notwithstanding financial relationships between the physicians and HMA, Naples HMA and their affiliates which are prohibited by 42 U.S.C. § 1395nn, and have submitted and received payment of Medicare claims for such patients in violation of the statute, all as more fully alleged in the particular factual allegations set forth herein.

16. By submitting claims for reimbursement or payment for services rendered to Medicare patients in violation of 42 U.S.C. § 1395nn, Defendants have knowingly

presented, or caused to be presented, false or fraudulent claims for payment or approval in violation of 31 U.S.C. § 3729(a)(1).

17. Defendants' conduct alleged above was in violation of the statutes and regulations affecting the Federal administration of Medicare health payment funds, adversely affected Defendants' rights to apply for and receive Medicare payments, and is required to be disclosed to the United States under the express terms of 42 U.S.C. § 1320a-7b(a)(3).

18. Failure to disclose Defendants' conduct alleged above constitutes fraud and fraudulent concealment under the terms of 42 U.S.C. § 1320a-7b(a)(3).

19. If the United States had been aware of Defendants' violations of 42 U.S.C. § 1320a-7b and 1395nn, the United States would not have paid, or caused to be paid, the Defendants' Medicare claims for services rendered in violation of those statutes. Defendants concealed their illegal activities from the United States in an effort to defraud the United States into paying Medicare claims it would not have otherwise paid. Defendants' submissions of claims for Medicare reimbursement involve an implied certification that Defendants will abide, and have abided by, and that they will adhere, and have adhered to, all the statutes, rules and regulations governing the Medicare program.

20. Federal Medicare regulations require the hospitals and healthcare providers, as a condition of their participation in the Medicare program, to certify to the United States and its agents that they are in compliance with the law respecting the securing of patients and provision of services to such patients.

21. Pursuant to Medicare regulations, hospitals operated by the Defendants are required to, and do, annually submit HCFA Form 2552 to agents of the Dept. of Health and

Human Services (HHS). The submission of such form and the information contained therein is an essential element in the Medicare claims process.

22. HCFA-2552 specifically contains the following notice:

> "MISREPRESENTATION OR FALSIFICATION OF ANY INFORMATION CONTAINED IN THIS COST REPORT MAY BE PUNISHABLE BY CRIMINAL, CIVIL AND ADMINISTRATIVE ACTION, FINE AND/OR IMPRISONMENT UNDER FEDERAL LAW. **FURTHERMORE, IF SERVICES IDENTIFIED IN THIS REPORT WERE PROVIDED <u>OR PROCURED THROUGH THE PAYMENT DIRECTLY OR INDIRECTLY OF A KICKBACK OR WERE OTHERWISE ILLEGAL</u>, CRIMINAL, CIVIL AND ADMINISTRATIVE ACTION, FINES AND/OR IMPRISONMENT MAY RESULT.**" (Emphasis added).

23. The Administrators of the Defendants' hospitals, on each HCFA-2552, were required to, and have, certified that he or she is

> "familiar with the laws and regulations regarding the provision of health care services, and that the services identified in this cost report were provided in compliance with such laws and regulations." (Emphasis added)

24. Defendants' cost reports (HCFA 2552) covering periods at least from early 1990 until the present, included services to patients whose physicians had received kickbacks or illegal inducements prohibited by 42 U.S.C. § 1320a-7b(b) and/or other laws, thus rendering the HCFA 2552 reports a "false record or statement."

25. Defendants' costs reports (HCFA 2552) covering periods from 2005 until the present, included services rendered to patients, which services and billing therefore were unlawful under 42 U.S.C. § 1395nn by virtue of the existence of prohibited financial relationships existing between the Defendants and the referring physicians, thus rendering the HCFA 2552 reports themselves a "false record or statement."

26. The statements that "the services identified in this cost report were provided in compliance with such laws and regulations" were false.

27. The Defendants "knowingly" (as that term is defined by statute) submitted such false statements to agents of the United States under the Medicare program, as an essential element in their claim submission process, in violation of 31 U.S.C. § 3729 (a)(2).

28. By the submission of such reports, the Defendants knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the United States in violation of 31 U.S.C. § 3 729(a)(2).

29. The Defendants knowingly presented Medicare claims to the United States based on said false and fraudulent certifications. Such conduct constitutes the presentation of false claims within the meaning of 31 U.S.C. § 3729(a)(1).

30. The Defendants knowingly made and caused to be made false and fraudulent records, certifications, or statements which were used to conceal, avoid, or decrease obligations to pay or transmit money to the United States in violation of 31 U.S.C. § 3729(a)(7).

31. Plaintiff reserves the right to plead further regarding additional false and fraudulent representations to the United States regarding Medicare claims, which are peculiarly within the knowledge of the Defendants, after discovery of the same.

VII.

**PARTICULAR FACTUAL ALLEGATIONS**

32. During the period that Mr. Mastej was employed by HMA affiliated hospitals, Geoff Moebius, the CEO of Physicians Regional Medical Center – Pine Ridge, negotiated a contract with a group of neurosurgeons, known as the Neuroscience and Spine Associates. Pursuant to that contract, the neurosurgery group was paid $2,000 per day for that group's

on call coverage of that facility's emergency room. Mr. Moebius asked Mr. Mastej, then the CEO of Physicians Regional Medical Center – Collier Blvd., to split the cost of the contract between the two hospitals. Mr. Mastej refused, as he was aware that the payment was simply a ruse to entice the neurosurgeons to practice and refer their patients to the two hospitals.

33. During the period in question, the physicians who practiced at Physicians Regional Medical Center – Pine Ridge and Physician Regional Medical Center – Collier Blvd. - did not perform trauma surgery or emergency neurosurgery at those facilities. As such, there was no purpose in paying $2,000 a day to that neurosurgery group to provide on-call services, except as an inducement to have that group refer its patients to the hospitols for services. .

34. Because the Collier Blvd facility refused to participate in the payment of $2,000 a day to the group, the neurosurgery group never consulted through the Physicians Collier Blvd facility. On the other hand, the group regularly performed scheduled back surgeries at the Pine Ridge facility, a HMA affiliated hospital. This payment of $2,000 per day in return for referrals has proved to be a lucrative business arrangement for HMA. A payment to a physician or a physician group to refer patients to a hospital is a violation of the Anti-Kickback Statute (payment for referrals).

35. After Mr. Mastej's termination, Mr. Mastej also observed that HMA was flying several physicians in a private jet to the Masters Golf Tournament in Augusta, Georgia, at no cost to the physicians or at under market rates as a further inducement for those physicians to practice and refer their patients to HMA and its affiliated hospitals.

36. The doctors flown by HMA to the Masters Golf Tournament in Augusta, Georgia, included, but are not necessarily limited to the following: Dr. Beretta (an orthopedic surgeon), Dr. Figlesthaler (a urologist) and Dr. Bertram (an orthopedic surgeon).

37. The trips occurred on April 10, 11, 12, 13, 14, and 15 of 2008.

38. In addition to the foregoing, HMA provided office space to Dr. Beretta at Physicians Regional Medical Center – Pine Ridge at the medical office building on campus, at below market rent. This was also done to induce Dr. Beretta to practice at and refer patients to HMA affiliated hospitals.

39. Concluding Allegations – Plaintiff believes and alleges that Defendants have engaged in numerous others acts, both within the State of Florida and at other localities throughout the operational area of Defendants' hospital system.

40. Many of the patients admitted to HMA affiliated hospitals are Medicare patients admitted by physicians who have received the inducements alleged above, or have financial relationships as alleged above.

41. Physicians Regional Medical Center – Pine Ridge also agreed with the urology group known as the Specialists in Urology not to recruit any further urologists in exchange for the urology group practicing at and referring cases to HMA and its affiliates.

## VIII.

## WILLFUL AND INTENTIONAL CONDUCT

42. Plaintiff alleges, on information and belief, that HMA, Naples HMA and their affiliates' conduct as alleged above was willfully and intentionally in violation of 42 U.S.C. § 130a- 7b(b), of 42 U.S.C. § 1395nn, and in 'knowing" violation of the False Claims Act 31 U.S.C. § 3729.

43. Defendants have been consciously aware of the statutes in question at all times material hereto.

44. The Medicare Anti-Kickback Laws, under 42 U.S.C. § 1320a-7b(b), allow the Secretary of Health and Human Services to create, by regulation, "safe harbors" under which certain practices which might constitute technical but inoffensive violations of the statute may be immunized from prosecution.

45. Prior to and during the time period in question, the Office of the Inspector General of the Department of Health and Human Services has issued "Fraud Alerts," in which the OIG has specified certain types of conduct which it considers to be indicative of Medicare Fraud and Abuse in violation of the statutes in question.

46. Defendants have made a conscious decision to engage in the practices alleged above with a conscious awareness that many of the practices in question were:

    a.    not immunized under the "safe harbor" regulations, and

    b.    condemned under the OIG Fraud Alerts.

47. Many of the practices alleged above are also unlawful under state law.

48. Hospital revenues depend upon inpatient occupancy levels, the extent to which ancillary services and therapy programs are ordered by physicians and provided to patients, and the volume of outpatient procedures ordered by physicians.

49. In the five (5) years from 2004 to 2009, HMA and its affiliates' revenues increased substantially.

50. The unlawful financial relationships, prohibited remuneration, and outright kickbacks as described in this Complaint are not isolated occurrences at HMA and its affiliates' Florida area healthcare facilities. Rather, they reflect merely the local manifestation of a nationwide business strategy conceived, designed, and implemented by

the managing officers and directors of Defendants HMA and its affiliate companies. Moreover, the submission of false HCFA form 2552 reports to conceal the fraudulent activities by local HMA and its affiliates' operating entities was also conceived, designed, and directed as a matter of corporate policy and practice by Defendants HMA and its affiliates. These Defendants have, accordingly, caused the knowing violations of the False Claims Act by HMA and affiliated hospitals named in this Complaint. Alternatively, Defendants HMA and its affiliates have structured, established, and utilized the local operating entity Defendants as mere conduits incorporated for the purpose of accomplishing, and actually accomplishing in fact, the illegal purpose of committing widespread systematic Medicare fraud. Defendants, HMA and its affiliates are, accordingly, liable for the conduct of all other HMA subsidiaries and affiliates as alleged in this Complaint.

## IX.

## DAMAGES TO THE UNITED STATES

51. The false statements and fraudulent misrepresentations contained in HCFA Forms 2552, filed by Defendants' hospitals, were a prerequisite for the United States to pay to the Defendants Medicare reimbursements in the millions of dollars.

52. All Medicare claims presented by Defendants supported by the false and fraudulent certifications alleged above were claims which the Defendants, under law, were not entitled to collect from the United States. All Medicare reimbursements which Defendants did in fact collect supported by the submission of such false cost reports and false certifications were unlawfully collected as the result of the false statements alleged above. The United States was damaged by the payment of such claims in an amount equal to the total amount of such payments. The United States has additionally been

damaged to the extent of the cost of its investigations into the conduct of Defendants alleged to be in violation of the Medicare Statutes.

53. In addition, the United States is entitled to recover a civil penalty of not less than $5,000.00 nor more than $11,000.00 for each Medicare or Medicaid claim supported by the submission of such false certifications.

54. All Medicare claims presented by the Defendants to the United States for payment based upon services rendered by physicians who

    a.    had received financial inducements to refer patients to Defendants' healthcare providers, or

    b.    were in prohibited financial relationships with the Defendants' healthcare providers,

were claims which the Defendants were not entitled to collect from the United States. All payments which the Defendants did in fact collect based on such claims were unlawfully collected as the result of the false claims alleged above. The United States was damaged by the payment of such claims in an amount equal to the total amount of such payments.

55. The United States is entitled to recover from the Defendants three times the amount of all damages alleged above, plus a civil penalty of not less than $5,000 nor more than $11,000 for each Medicare or Medicaid claim submitted contrary to law.

**WHEREFORE, PREMISES CONSIDERED**, Relator prays that the Defendants be cited to appear and answer herein, and that this cause be set for trial; that upon trial, that the United States recover three (3) times the amount which the United States has paid based upon such false claims, as well as civil penalties, and such other and further relief as the United States may justly show itself to be entitled, and that Relator recover such monies, including attorney's fees and expenses, as he may be justly authorized to

recover pursuant to law, and have such other and further relief as he may be entitled to receive, and general relief.

    Respectfully submitted,

    **STRASBURGER & PRICE, LLP**

    */s/ Dani Smith*

    **DANI SMITH**
    Florida Bar No. 0980765
    2801 Network Blvd., Suite 600
    Frisco, Texas 75034-1872
    (469) 287-3918 – Telephone
    (469) 287-3999 – Facsimile
    e-mail: dani.smith@strasburger.com

**OF COUNSEL:**
**STRASBURGER & PRICE, LLP**
**GARY J. SILLER**
Texas Bar No. 18350300
**CHARLES "SCOTT" NICHOLS**
Texas Bar No. 14994100
**ELIZABETH B. KAMIN**
Texas Bar No. 02620900
1401 McKinney, Suite 2200
Houston, Texas 77010-3033
(713) 951-5600 – Telephone
(713) 951-5660 – Facsimile
e-mail: scott.nichols@strasburger.com
e-mail: gary.siller@strasburger.com
e-mail: betsy.kamin@strasburger.com

**ATTORNEYS FOR PLAINTIFF,**
**UNITED STATES OF AMERICA**
***EX RELATION* J. MICHAEL MASTEJ**