UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA EX. REL. J.
MICHAEL MASTEJ,

                Plaintiffs,

vs.                        Case No.   2:11-cv-89-FtM-29DNF

HEALTH MANAGEMENT ASSOCIATES, INC.
AND NAPLES HMA, LLC,

                Defendants.
_____

## OPINION AND ORDER

This matter comes before the Court on Defendants' Joint Motion to Dismiss the Second Amended Complaint (Doc. #59) filed on May 17, 2011, by defendants Health Management Associates, Inc. (MHA) and Naples HMA, LLC (Naples HMA)(collectively, the defendants). Plaintiff, Relator J. Michael Mastej (relator or Mastej) filed a memorandum in opposition to the motion on May 31, 2011. (Doc. #60.) Defendants filed a reply in support of their motion. (Doc. #64.) The United States (the Government), although it declined to intervene (Doc. #76), filed a statement of interest in response to the motion (Doc. #65) to which defendants filed a response. (Doc. #66.)

**I.**

Mastej brought this *qui tam*[1] action asserting violations of the False Claims Act, 31 U.S.C. § 3729 *et. seq*. (FCA) through violations of the Stark Law[2] and the Anti-Kickback Statute.[3]   He asserts four causes of action under the False Claims Act: (1) presentation of false claims[4] (Count I); (2) making or using a

---

[1]The False Claims Act may be enforced through civil actions initiated by the government or suits by private individuals, on behalf of the United States, called *qui tam* actions.   The private plaintiffs in *qui tam* actions are known as "relators," and the Act entitles them to a percentage of any recovery made on behalf of the government from a False Claims Act defendant.   The government, after receiving the complaint, has the opportunity to intervene. 31 U.S.C. § 3730(b)(2).   If the Government chooses to intervene, it has "the primary responsibility for prosecuting the action . . . ." 31 U.S.C. § 3730(c)(1).   However, "[i]f the Government elects not to proceed with the action, the [relator has] the right to conduct the action."   31 U.S.C. § 3730(c)(3).   If the government does not intervene and the relator successfully prosecutes the case, the court awards him between 25 and 30 percent of the recovery proceeds.   31 U.S.C. § 3730(d)(1).   If the government prosecutes the action, the relator is still entitled to between 15 and 25 percent of the recovery proceeds.   31 U.S.C. § 3730(d)(2).   Here, the government elected not to intervene, leaving Mastej to prosecute the action alone.

[2]42 U.S.C. § 1395nn, commonly referred to as the Stark Law, the Stark Statute, or the Stark Amendment, prohibits a hospital from submitting Medicare claims based on patient referrals from physicians having certain kinds of financial relationships with the hospital that might improperly influence the physician's medical judgment.

[3]The Anti-Kickback Statute makes it a felony to offer kickbacks or other payments in exchange for referring patients "for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program."   42 U.S.C. § 1320a-7b(b)(2)(A).

[4]See 31 U.S.C. § 3729(a)(1)(A), formerly codified as 31 U.S.C.
(continued...)

false record or statement to cause a claim to be paid[5] (Count II; (3) making or using a false record or statement to avoid an obligation or refund[6] (Count III); and (4) conspiring to commit false claims[7] (Count IV).

The defendants assert that the Second Amended Complaint should be dismissed because relator failed to meet the pleadings requirements set forth in the Federal Rules of Civil Procedure.  In response, Mastej contends that he has met the pleading requirements and alternatively asserts that he should be granted leave to amend his complaint.[8]  For the reasons discussed below, the Court finds that relator has failed to meet the pleading requirements set forth in Rule 9 but will grant him leave to amend.

---

[4](...continued)
§ 3729(a)(1).

[5]See 31 U.S.C. § 3729(a)(1)(B), formerly codified as 31 U.S.C. § 3729(a)(2).

[6]See 31 U.S.C. § 3729(a)(1)(G), formerly codified as 31 U.S.C. § 3729(a)(7).

[7]See 31 U.S.C. § 3729(a)(1)(C); formerly codified as 31 U.S.C. § 3729(a)(3).

[8]The Government "takes no position as to whether Relator in this case has adequately pled facts that would state a cognizable claim under the FCA . . . ."  (Doc. #65, p. 2.)  Instead, the Government contends the defendants have misstated the applicable law.

**II.**

In deciding a motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff. Erickson v. Pardus, 551 U.S. 89 (2007); Christopher v. Harbury, 536 U.S. 403, 406 (2002). "To survive dismissal, the complaint's allegations must plausibly suggest that the [plaintiff] has a right to relief, raising that possibility above a speculative level; if they do not, the plaintiff's complaint should be dismissed." James River Ins. Co. v. Ground Down Eng'g, Inc., 540 F.3d 1270, 1274 (11th Cir. 2008) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007)).

The Eleventh Circuit requires that in order to avoid dismissal of a FCA claim, a relator must plead "facts as to time, place, and substance of the defendants' alleged fraud, specifically, the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them." United States ex rel. Seal v. Lockheed Martin Corp., 429 Fed. App'x 818, 820 (11th Cir. 2011); citing United States ex rel. Sanchez v. Lymphatx, Inc., 596 F.3d 1300, 1302 (11th Cir. 2010); see also United States ex rel. Clausen v. Lab. Corp. Of Am., 290 F.3d 1301, 1310 (11th Cir. 2002); United States ex rel. Shurick v. Boeing Company, 330 Fed. App'x 781, 783 (11th Cir. 2009)("the complaint must allege facts as to time, place and substance of the defendants's alleged fraud, [and] the details of the defendants allegedly fraudulent acts, when they occurred,

-4-

and who engaged in them.")  Failure to satisfy Rule 9(b) is grounds to dismiss the Complaint.  Corsello v. Lincare, Inc., 428 F.3d 1008, 1012 (11th Cir. 2005).

Rule 9(b)'s particularity requirement for fraud allegations exists to put defendants on notice as to the exact misconduct with which they are charged and to protect defendants against spurious charges.  Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1202 (11th Cir. 2001).  The Eleventh Circuit has cautioned that "Rule 9(b) must not be read to abrogate rule 8, however, and a court considering a motion to dismiss for failure to plead fraud with particularity should always be careful to harmonize the directives of rule 9(b) with the broader policy of notice pleading." Friedlander v. Nims, 755 F.2d 810, 813 n.3 (11th Cir. 1985).

### III.

The Second Amended Complaint alleges the following:

Defendant HMA is a public company incorporated in Delaware. It has various subsidiaries and operates approximately fifty-six (56) hospitals in fifteen (15) states.  Defendant HMA Naples is a HMA subsidiary doing business as "Physicians Regional Medical Center."  Physicians Regional Medical Center has two campuses that operate under the same license and provider number: (1) Physicians Regional Medical Center, Collier Boulevard (Collier Boulevard Facility) and (2) Physicians Regional Medical Center, Pine Ridge (Pine Ridge Facility).  (Doc. #58, ¶¶ 54, 57.)

Relator was employed in various capacities by defendant HMA, or one of its subsidiaries, from January 2001 through October 2007. On February 5, 2007, he became Chief Executive Officer (CEO) of the Collier Boulevard Facility.  Relator contends that both during and after his employment the defendants participated in three (3) separate schemes to present false claims to the federal government in violation of the FCA.

## A.   Scheme One

In the first of these schemes, relator alleges that despite the fact that neither the Collier Boulevard nor Pine Ridge Facilities offered emergency surgery or emergency neurosurgery services, Geoff Moebius (Moebius), the CEO of the Pine Ridge facility, negotiated call coverage contracts with the following neurosurgeons: Dr. Michael Lusk, Dr. John Drygas, Dr. Mark Gerber, and Dr. Rick Bhasin of Neuroscience and Spine Associates.[9] Pursuant to the call coverage contracts, each neurosurgeon was paid $1,000 for each weekday and $2,000 for each weekend call coverage was provided.  Relator contends that the total payments to these neurosurgeons were significantly above the fair market value for the services provided and were not commercially reasonable. Relator contends that Moebius informed him that the call contracts were important to keep the neurosurgeons referring lucrative

---

[9]The call coverage contracts with Doctors Lusk, Drygas and Gerber became effective in January 2007 and Dr. Bhasin's contract became effective some time in 2009.  (¶63.)

scheduled surgeries at the Pine Ridge Facility.  Moebius further indicated to relator that the surgeons would refer scheduled surgeries to the Collier Boulevard Facility if it shared in the cost of the call coverage, but relator declined. (Id. at ¶¶62-65.)

## B.   Scheme Two

In the second scheme, relator contends that the defendants conspired to provide improper remuneration and/or enter into prohibited financial relationships with several physicians for the purpose of generating patient referrals, including Medicare and Medicaid patients, to the Collier Boulevard Facility.  As part of this scheme, in 2008 the defendants flew Dr. Figlesthaler, Dr. Beretta, Dr. Bertram, and Dr. Hanson in HMA's corporate jet to the Masters Golf Tournament in Augusta, Georgia.  The flight was at no cost to the physicians.  In addition, the physicians were provided with complimentary car rentals, all-access badges to the tournament, and food and drink.  Each of these doctors were flown on a separate flight and accompanied by a hospital administrator who discussed having the physician engage in additional business with the Collier Boulevard Facility.[10]   Following the Masters

---

[10]Specifically, on April 10, 2008, Dr. Figlesthaler was accompanied by Toby Butler, Chief Financial Officer of the Collier Facility, and Moeibius.  Dr. Beretta flew with John Turner, Practice Manager for the Pine Ridge Facility on April 11, 2008. Dr. Betram flew with Chief Operating Officer of HMA, Kelly Curry, and Moebius on April 13, 2008.  Finally, Dr. Hanson flew with Todd Lupton, Chief Financial Officer of Physicians Regional Medical Center, and Moebius on April 13, 2008.

Tournament, relator contends that the physicians "referred Medicare and Medicaid patients (and other patients) for treatment at Pine Ridge and Collier Boulevard, for which Defendants systematically submitted false and illegal claims to the Government under the Medicare and Medicaid programs."  (Id. at ¶¶70-72.)

**C.   Scheme Three**

As to the third scheme, Mastej alleges that the defendants agreed with a urology group, Specialists in Urology, not to recruit other urologists in exchange for the group practicing at, and referring patients to, the Pine Ridge and Collier Boulevard Facilities.  The Second Amended Complaint does not specifically identify any wrongdoers as to this scheme nor does it describe when these allegations occurred.  (Id. at ¶ 73.)

**D.   Violations of the FCA**

Relator contends that these three schemes violated the Stark Law and/or the Anti-Kickback Statute.  Defendants knew that compliance with these laws was a prerequisite to being reimbursed under Medicare, and defendant's certified in their Form CMS-2552, commonly referred to as Hospital Cost Reports, that they were in compliance with federal law.[11]  The Government, relying on these

---

[11]Relator contends the following Hospital Cost Reports were falsely submitted: (1) on or about May 30, 2008, for the period of January 1, 2007 through December 31, 2007, signed by Jeff Moebius; (2) on or about June 7, 2010, for the period of January 1, 2008 to December 31, 2008, signed by Todd Lupton; (3) on May 26, 2010, for the period of January 1, 2009 through December 31, 2009, signed by
(continued...)

false certifications, paid on the claims.   Further, relator contends that the false Medicare cost reports necessarily caused submission of false claims or incorrect data to the State Medicare program.

**IV.**

**A.   Count I**

   **1.   Particularity of Pleading**

Count I is brought pursuant to 31 U.S.C. § 3729(a)(1)(A), which imposes liability on a person who "knowingly *presents, or causes to be presented*, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval."   Id. (Emphasis added).   This section of the act requires that false claims actually be submitted to the federal government.

The Eleventh Circuit has repeatedly held that the "central question" in a claim brought pursuant to this section of the statute "is whether the defendant ever presented [or caused to be presented] a 'false or fraudulent claim' to the government." Hopper v. Solvay Pharm., Inc., 588 F.3d 1318, 1326 (11th Cir. 2009); quoting Clausen, 290 F.3d at 1311.   Because the fraudulent act under this section is the presentation of false claims, the presentment itself must be pled with particularity.   In order to

---

[11](...continued)
Todd Lupton.   (Id., at ¶33.)

plead with sufficient particularity, a complaint must include the "who," "what," "where", "when" and "how" of the alleged fraudulent submission to the government. Corsello v. Lincare, Inc., 428 F.3d 1008, 1014 (11th Cir. 2005) see also United States ex rel. Atkins v. McInteer, 470 F.3d 1350, 1357 (11th Cir. 2006). Further, Rule 9(b)'s directive that "the circumstances constituting fraud or mistake shall be stated with particularity" does not permit a FCA plaintiff merely to describe a private scheme in detail but then to allege simply and without any stated reason for his belief that the claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the Government. United States ex rel Seal I v. Lockheed Martin Corp., 429 Fed. App'x 88, 821 n 1 (11th Cir. 2011); Clausen, 290 F.3d at 1311. A court may not make an assumption about a FCA defendant's submission of actual claims to the Government without stripping all meaning from Rule 9(b)'s mandate of specificity or ignoring that the "true essence of the fraud" involves an actual claim for payment from the Government and not merely a preparatory scheme. Atkins, 470 F.3d at 1357; see also United States ex rel. Baklid-Kunz v. Halifax Hospital Medical Center, slip opinion, 2011 WL 2269968 (M.D. Fla. June 6, 2011).

A violator of government regulations is ineligible to participate in a government program and when that violator presents claims for payment that the violator knows the government does not

owe, the FCA makes that violator liable for its submission of those false claims.  United States ex rel. McNutt v. Haleyville Med. Supplies, Inc., 423 F.3d 1256 (11th Cir. 2005).  "[W]here the government pays funds to a party, and would not have paid those funds had it known of a violation of a law or regulation, the claim submitted for those funds contained an implied certification of compliance with the law or regulation and was fraudulent."  See United States ex rel. Barrett v. Columbia/HCA Healthcare Corp., 251 F. Supp. 2d 28, 33 (D.D.C. 2003)(citation omitted); see also U.S. ex rel. Compton v. Circle B. Enterprises, Inc., 2010 WL 942293, at *7 (M.D. Ga. Mar. 11, 2010).  Nevertheless, "[t]he False Claims Act does not create liability merely for a health care provider's disregard of Government regulations or improper internal policies unless, as a result of such acts, the provider knowingly asks the Government to pay amounts it does not owe."  United States ex rel. Clausen v. Lab. Corp. of Am., Inc., 290 F.3d 1301, 1311 (11th Cir. 2002).  Thus, to violate this section of the Act, a defendant must have violated the regulations and submitted claims for which payment is known by the claimant not to be owed a false claim under the Act.

For example, in McNutt the Government alleged the defendant violated the Anti-Kickback Statute, that compliance with the statute was necessary for Medicare reimbursement, and that the defendants submitted claims for reimbursement despite the fact that

they were ineligible for the payments demanded on those claims. The Court found the government had pled its claims with sufficient particularity because the allegation was neither general nor speculative because "the government identified *specific claims submitted* by [the defendants] to Medicare for reimbursement for services, which had been rendered to patients referred by the individuals receiving kickbacks."  McNutt, 423 F.3d at 1258. (Emphasis added).

Here, unlike McNutt, relator does not specifically identify a single claim within the various Hospital Cost Reports related to any of the three schemes.  He fails to identify a single claim for reimbursement for patients who were referred by the Neuroscience and Spine Associates in Scheme One, the various doctors who attended the Masters Tournament in Scheme Two, or any urologist from Specialists in Urology in Scheme Three.  Instead, he summarily concludes that these three schemes necessarily resulted in the defendant's systematic submission of false claims.  However, the notion that "a pattern of improper practices of the defendants leads to the inference that fraudulent claims were submitted to the government" has been rejected by the Eleventh Circuit.  Corsello, 428 F.3d 1008, 1013.  Because the Court should not make inferences about the submission of fraudulent claims, which would "strip[] all meaning from Rule 9(b)'s requirements of specificity" Clausen, 290

F.3d at 1312 n. 21, the Court finds relator's Second Amended Complaint fails to plead Count I with the requisite specificity.

## 2.  Indicia of Reliability

Rule 9 can also be satisfied if a Complaint has an "indicia of reliability" that indicates that false claims were in fact submitted to the government.  Clausen, 290 F.3d at 1311.  For example, in United States ex rel. Walker v. R&F Props. of Lake Cnty., Inc., 433 F.3d 1349, 360 (11th Cir. 2005), the relator alleged personal knowledge regarding the defendants' billing practices.  The Court found that this gave rise to a well-founded belief that the defendant submitted actual false or fraudulent claims.  The Eleventh Circuit found the allegations reliable because they were grounded in first-hand knowledge that explained why the relator believed a specific defendant submitted false or fraudulent claims to the government.  Id.

Relator contends that he has asserted an adequate indicia of reliability, and therefore has met the pleading requirements of Rule 9.  He alleges that he began his tenure with HMA as Vice President of Acquisitions and Development where he attended monthly operations meetings that included the Chief Executive Officer, Chief Operating Officer, Regional Senior Vice Presidents, Divisional Vice Presidents, and corporate department heads.  (Doc. #58, ¶¶58-59.)  Prior to his employment with HMA, relator held a number of positions within the health care industry, including

Medicare/Medicaid auditor for Michigan Blue Cross, a reimbursement specialist with Humana, and Chief Executive Officer of several hospitals and medical centers.  (<u>Id.</u> at ¶56.)  Relator contends that his specialized experience provides the indicia of reliability required to meet Rule 9's heightened pleading requirement.

The Court first notes that relator makes no allegations that he had any familiarity, through his various roles with the defendants and subsequent to his tenure with the defendants, with the billing practices of the defendants.  Thus, unlike <u>Walker</u>, relator has not pled any facts that indicate that he had any specific knowledge through his various positions as to the actual submission of claims.  Nonetheless, even if the Court were to infer that a CEO has personal knowledge of billing, the Court would still find that plaintiff's Complaint lacks the requisite indicia of reliability.

According to the Second Amended Complaint, Mastej ended his tenure with the defendants in October, 2007.  However, the first alleged false Hospital Cost Report was not submitted until on or about May 30, 2008, seven (7) months after relator was employed by the defendants.  Thus, relator had no specific knowledge as to the alleged fraudulent claims that were submitted.[12]  Thus, while the Court may infer a general knowledge of defendant's billing

_____

[12]The Court further notes that relator was not employed by the defendants during the entirety of Scheme Two.

practices and submission of claims through his role as CEO, he has not pled any facts showing he had any specific knowledge related to the submission of the specific claims at issue in this matter. Relator does not provide an explanation for why he believes fraudulent claims were ultimately submitted and instead assumes that because Hospital Cost Reports were submitted to the government, they must have included claims for patients referred through the three various schemes.  However, because the actual presentment of the claims require particularity, or otherwise an indicia of reliability, relator's role as CEO before the claims were submitted is simply not enough.  Thus, defendants' motion to dismiss Count I is granted.

**B.   Count II**

Count II is brought pursuant to 31 U.S.C. 3729(a)(1)(B), which creates liability for a defendant who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim."  Unlike Section 3729(a)(1)(A), this Section does not have a presentment clause.  The Supreme Court noted that "[t]he inclusions of an express presentment requirement in subsection [(a)(1)(A)], combined with the absence of anything similar in subsection [(A) (1)(B)], suggests that Congress did not intend to include a presentment requirement in subsection [(A)(1)(B)]." Allison Engine Co. v. United States ex rel. Sanders, 553 U.S. 662 (2008).  Thus, the Eleventh Circuit has held that this

section "does not demand proof that the defendant presented or caused to be presented a false claim to the government or that the defendant's false record or statement itself was ever submitted to the government." Hopper, 588 F.3d at 1327. Instead, a relator must show "that (1) the defendant made a false record or statement for the purpose of getting a false claim paid or approved by the government; and (2) the defendant's false record or statement caused the government to actually pay a false claim, either to the defendant itself, or to a third party." Id. Further, while subsection (a)(1)(B) relieves a plaintiff of the presentment requirement, the text of the subsection which proscribes false statements "to get a false or fraudulent claim *paid or approved by the Government*" suggests that "Congress intended this subsection to impose liability for false statements that actually cause the government to pay amounts it does not owe." Id.; see also United States ex rel. Schmidt v. Zimmer, Inc., 386 F.3d 235, 242 (3d Cir. 2004).

In Hopper, the plaintiff alleged that the defendant utilized a sophisticated marketing plan to induce physicians to prescribe a drug for purposes not approved by the Federal Drug Administration (FDA), and this conduct resulted in the submission for reimbursement by Government Healthcare Programs even though the defendants were not eligible for reimbursement. Hopper, 588 F.3d at 1323. The complaint further alleged that the defendants

-16-

provided kickbacks to physicians and other healthcare providers in order to induce them to prescribe the drug for purpose that were not approved by the FDA.  _Id._  The Eleventh Circuit rejected the relator's position that this section is an attempt provision that imposes liability for statements made with the intent to defraud the government, whether or not the government actually pays the false claim.  It reasoned that although a defendant need not show that false statements themselves were presented to the government, or that the defendant need not personally submit a false claim, the relator must show that the government paid a false claim to prove a violation.  _Id._  Therefore, a relator must allege with particularity, pursuant to Rule 9(b), that the false statements ultimately led the government to pay amounts it did not owe.  _Id._ at 1329.  Ultimately, however, the Court did not analyze whether the Complaint had alleged with particularity the payment of a false claim because it found the Complaint was otherwise deficient; it failed to allege that the defendants intended for the government to rely on their false statements in deciding whether to pay a false claim.

Here, relator fails to plead both requirements of this claim. First, Mastej fails to show that the defendants acted with the purpose of getting a false claim paid.  Although he makes this conclusory allegation, the complaint is otherwise without factual support.  Within the Second Amended Complaint, he pleads the

purposes of the three (3) schemes: (1) Scheme One was "to entice the neurosurgeons to practice and refer their patients to the two hospitals" (Doc. #58, ¶65); (2) the "intended purpose" of Scheme Two "was to generate business for [d]efendants" (Id. at ¶71); and (3) the purpose of Scheme Three was to make an exclusive urology arrangement with Specialists in Urology in exchange for the referral of patients.  The Complaint fails to link the purposes of these schemes with the intent of submitting false statements to the Government with the intention of the Government relying on the statement as a condition of payment.  Simply put, "[t]he direct link between the [three schemes] and the Government's decision to pay or approve a false claim is too attenuated to establish liability."  Hopper, at 1330.

Secondly, the Second Amended Complaint fails to plead the actual payment by the government with the requisite specificity. Relator merely alleges that the Government paid on these claims, but does not provide the dates, amounts, or any other identifying detail of any of these alleged payments.  Furthermore, because the relator was not employed by the defendants when these reimbursements would have been received, the Second Amended Complaint does not have the indicia of reliability to excuse this failure.  Plaintiff's conclusory allegations that the Government paid these claims is not sufficient to meet the requirements of

-18-

Rule 9.  Accordingly, defendants' motion to dismiss Count II is granted.

## C.   Count III

Count III is brought pursuant to 31 U.S.C. § 3729(a)(1)(G), which states that the U.S. government may "recover a civil penalty from any person who 'knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government.'" United States v. Pemco Aeroplex, Inc., 195 F.3d 1234, 1236 (11th Cir. 1999).  This section, commonly referred to as the "reverse-false-claim provision," was added in 1986 "to provide that an individual who makes a material misrepresentation to avoid paying money owed the Government would be equally liable under the Act as if he had submitted a false claim to receive money." Cullins v. Astra, Inc., 2010 WL 625279 (S.D. Fla. Feb. 17, 2010) quoting S. Rep. No. 99-345, at 18; 1986 U.S.C.C.A.N. at 5283.  In a Section 3729(a)(1)(G) action, "'the defendant's action does not result in improper payment by the government to the defendant, but instead results in no payment to the government when a payment is obligated.'" Hoyte v. Am. Nat'l Red Cross, 518 F.3d 61, 63 n. 1 (D.C. Cir. 2008)(quoting United States ex rel. Bain v. Ga. Gulf Corp., 386 F.3d 648, 353 (5th Cir. 2004)).  A plaintiff must demonstrate the following five (5) elements to prevail on a reverse-false-claim action: (1) a false record or statement and (2)

the defendant's knowledge of the falsity; (3) that the defendant makes, uses, or causes to be made or used a false statement; (4) for the purpose to conceal, avoid, or decrease an obligation to pay money to the government; and (5) materiality of the misrepresentation. <u>Cullins</u>, 2010 WL 625279 at * 5; <u>see also</u> <u>United States v. Bourseau</u>, 531 1159, 1164 (9th Cir. 2008)(collecting cases).

Here, Mastej simply makes legal conclusions that defendants violated this section of the Act but makes no specific allegations to support the claim.  The Complaint fails to allege any amounts owed to the government by the defendants or otherwise provide any other information that puts defendants on notice as to the substance of the plaintiff's claims.  Relator's allegations related to this claim are general and conclusory and fail to meet the pleading requirements in Rule 9.  Thus, the motion to dismiss Count III is granted.

## D.   Count IV

Count IV, which asserts that the defendants conspired to defraud the government in violation of section 3729(a)(1)(C) of the FCA, also requires compliance with Rule 9(b).  <u>Corsello</u>, 428 F.3d at 1014.  To state a claim under section 3729(a)(1)(C) a plaintiff must demonstrate "(1) that the defendant conspired with one or more persons to get a false or fraudulent claim paid by the United States; (2) that one or more of the conspirators performed any act

to effect the object of the conspiracy; and (3) that the United States suffered damages as a result of the false or fraudulent claim." Id. quoting United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Provident Life & Accident Ins. Co., 721 F.Supp. 1247, 1259 (S.D. Fla. 1989).

Plaintiff's bare legal conclusions of conspiracy are wholly unsupported by specific factual allegations of any agreement or an overt act. See Corsello, 428 F.3d at 1014. The relator fails to describe, in specific detail, an act that furthered the object of a conspiracy. As discussed above, relator makes no specific allegations that any Medicare or Medicaid patient was referred to the defendants by the various physicians identified in the Second Amended Complaint. Nor does relator identify any specific claims included in the alleged fraudulent submissions that resulted from the alleged referrals. The Second Amended Complaint does little to put defendants on notice as to the specific basis of the conspiracy claim. Thus, defendant's motion to dismiss Count IV is granted.[13]

**V.**

Although the Court finds that relator failed to plead his allegations with sufficient particularity, the Court will provide Mastej the opportunity to amend his Complaint.

_____

[13]Because the Court finds that all four (4) counts were not pled with the specificity required by Rule 9, the Court need not address defendant's arguments that these counts were improperly asserted against HMA.

Accordingly, it is now

**ORDERED**:

1.   Defendants' Joint Motion to Dismiss the Second Amended Complaint (Doc. #59) is **GRANTED** and the Second Amended Complaint is dismissed without prejudice.

2.   Mastej may file an Amended Complaint within twenty-one (21) days of the signing of this Opinion and Order.

3.   Within twenty-eight (28) days of this Opinion and Order, the parties shall file a Joint Case Management Report with new scheduling dates.

**DONE AND ORDERED** at Fort Myers, Florida, this ___16th___ day of February, 2012.

_____

_____
JOHN E. STEELE
United States District Judge

Copies:
Counsel of record

-22-